URSCHEL LEAD & ZINC MINES, INC., *v.* SMITH.

4-4816

Opinion delivered November 15, 1937.

*Shouse & Walker,* for appellant.

*Spears & Moore, V. D. Willis* and *Eugene Moore,* for appellee.

BAKER, J. Charley Smith filed suit in the circuit court of Newton county alleging personal injuries and asking for $45,000 damages. Suit was filed on the 14th day of December, 1936. Smith had tried to make settlement and had threatened suit and H. C. Urschel, the president of the corporation, had had him examined on one or two occasions by physicians to determine if Smith had suffered an injury, and, if so, the extent thereof.

Urschel had lived in Bowling Green, Ohio. He became interested in mines and mining in Newton county and he and Eli Wages, with others, had formed a corporation under the name of Urschel-Wages Mining Company. Eli Wages was named as the resident agent for

service of process. Thereafter, the exact time not shown, Wages disposed of his interests in the company and the corporation is said to have taken in some new stockholders; at least, it changed its name to Urschel Lead & Zinc Mines, Inc., and H. C. Urschel was named as a resident agent, with principal offices at Rush, Arkansas. It seems that at the time or after the change of the name of the corporation there was no proper certificate filed in the office of the clerk of Newton county showing that a new resident agent had been appointed.

The first complaint was filed against Urschel-Wages Mining Company and service of summons was had on Eli Wages. On the 14th of December, H. C. Urschel, who was then in charge of the corporation, talked with a lawyer at Jasper, Arkansas, and with a firm of lawyers at Harrison, Arkansas, but advised that he was without power to employ or contract with them at that time, but one of these lawyers, acting under tentative employment, or the prospect thereof, procured a copy of the complaint against the Urschel-Wages Mining Company. Mr. Urschel knew this complaint had been filed. He attempted to get word to attorneys representing the plaintiff in regard to the change of name of the company and attempted to give them information that he was the proper party upon whom service might be had. He remained at Harrison for a few days awaiting service, after which he went to Ohio, where he thought it was necessary he should go for medical treatment. He also advised that Wages was no longer connected or in any manner interested in the corporation. Evidently attorneys for the plaintiff did not wholly disregard this information. On the same day, December 14, at 7:30 p. m., they filed a new complaint and had a new summons issued against the corporation, by its proper name, but had service a second time upon Eli Wages, although, presumably, advised that he, at that time, was not in any way connected with the corporation. This statement is made not by way of holding that such service, had under the circumstances, on conditions that prevailed, was not good, nor do we think it necessary to determine that fact at this time for several reasons, and one is that no new certificate had been filed in the county

clerk's office showing the designation of another resident agent, and the record there, at that time, showed Wages as the agent named by the corporation under its name and former management. Sections 2215 and 2216, Pope's Digest.

H. C. Urschel returned to his former home in Ohio where he notified his father of the pendency of this suit against the Urschel-Wages Mining Company, and it may be said that the father shortly thereafter made some effort to determine if a new suit had been filed and an effort to secure some attorney to represent the corporation. H. C. Urschel, the man who had been in charge of the business of the corporation, sometime late in December, entered the hospital where he remained for several weeks. There seems to be no dispute about the fact of his incapacity to look after and represent the interests of the corporation during that period. On the 2d day of court, which was the 5th day of January, when service had barely had time to ripen, a default judgment was taken against the corporation in the sum of $25,000. This judgment was rendered in the circuit court, before the Hon. J. M. Shinn, chancellor, on exchange with the Hon. J. H. Black, the regular circuit judge, presiding. After the trial of this case the court did not adjourn regularly until court in course, but, thereafter, on the 19th day of April, 1937, the defendant, the appellant here, brought to a hearing a motion for a new trial, setting up among other grounds the following:

"That its principal officers are B. H. Urschel president, and G. K. Urschel, secretary; that at no time had service been had on any of its officers or agents; that the judgment complained of was rendered on the 5th day of January, 1937, without proper service; that none of the officers or agents of the company knew that suit had been filed until on or about the day of trial; that all the officers and agents of the company were then at its home office in Bowling Green, Ohio, a distance of more than 800 miles from Jasper, where the case was pending; that the weather was so inclement that it was impossible for them to appear and make defense; that as soon as weather and travel conditions improved so that they could come to

Jasper and to their property, they did so; that they then learned that service was intended to be had upon defendant by delivering a copy of summons to Eli Wages; that Wages was not an officer of the company or a stockholder therein; that he had no interest in said company and was not at or about the place of business of the defendant at the time he was served; that the officers of the defendant company had no knowledge or information that such service had been so attempted.

"That the alleged cause of action was wholly without merit; that if the plaintiff sustained injury, such was not sustained while he was an employee of the defendant; that, if such were sustained, it was the result of a fall from a tree about the last of September, 1936; that soon after said fall and before plaintiff conceived the thought of falsely alleging said injuries to have been sustained while in the service of this defendant, he stated to E. J. Eastep and LeRoy A. Stroyick that he had fallen from a tree while gathering grapes and received injuries.

"That, if proper and timely service of summons had been had upon this defendant, it could and would have investigated the alleged cause of action and ascertained the facts and would have procured proper witnesses to controvert the allegations of plaintiff; that after judgment was taken by default for $25,000, the same was so shocking to the moral sense of the community, that information came to the officers of the defendant which established the falsity of the claims of the plaintiff; that it was impossible for the defendants to procure such information prior to said judgment; that the defendants had a meritorious defense.

"That the affidavits of B. H. Urschel and H. C. Urschel and LeRoy A. Stroyick and E. J. Eastep were attached to the motion and made a part of it; that defendant believed the facts set forth in said affidavits to be true."

Affidavits of B. H. Urschel and H. C. Urschel, as attached to the motion, are as follows:

B. H. Urschel said: "I am president of Urschel Lead & Zinc Mines; about the last of December, 1936, I received information that one Charley Smith had brought

suit against Urschel-Wages Mining Company, but no summons of any kind was served on me or any officer of the company or any one at the office of the company. Later I was informed that J. E. Wages had been served. Wages was not an employee or agent of the company and never had been an employee or agent or stockholder of the present company and had no relation with the company.

"When I first received information suit had been filed, I was at my home in Bowling Green, Ohio, a distance of more than 800 miles from Jasper. It was the middle of winter and I could not get to Jasper. If service was ever had on Eli Wages it was never delivered to me or any officer or representative of the company within my knowledge. Neither I, nor any officer of the company, had opportunity to prepare the cause for trial. It being impossible to reach Jasper for trial, I tried by telephone to secure an attorney, but was unable to do so with sufficient promptness to be represented at the trial. The company has a valid defense to this cause."

H. C. Urschel said: "I live at Rush, Arkansas. My former home and interests are in Bowling Green, Ohio. I am in Arkansas now looking after mining interests, and during my stay here am making this state my home.

"I was in charge of Urschel Lead & Zinc Mines, Inc., September-December, 1936. It is in Newton county, but our offices are at Rush, Marion county. I did not hear anything about an injury to Charley Smith until several weeks after he now claims he was hurt. No complaint was made to me or any officer of the company in any way for several weeks. About the middle of December I received this information and learned that he was filing suit against Urschel-Wages Mining Company. I thought he meant to sue the Urschel Lead & Zinc Mines, Inc. At that time I was making ready to go to my home in Ohio for the Christmas holidays and for medical attention. For a few days I was stopping at the Commercial Hotel in Harrison. I requested Woody Murray, an attorney at Harrison, to advise attorneys for Mr. Smith where I was, in case they might want to sue the company and get service on me. I was the only agent for service at that time.

I expected suit to be filed and service had on me, but received no notice or service. Late in the afternoon of December 17, 1936, I saw the sheriff of Newton county in Harrison and really expected service at that time, but after speaking to him, he passed on. I concluded that they had decided not to bring suit against the company. The next day I left for Ohio. I went to my doctor about December 23, and he made arrangements for me to get in the hospital at Toledo, Ohio, immediately after January 1. I went to the hospital and was released from the hospital March 1, and was released from my doctor's care about April 17, 1937. The first information I had that suit had been filed against my company was either January 1 or 2 when my father advised me he had received a wire of some kind informing him that they had sued our company and that the case was for trial January 2. Of course, we couldn't get there for trial. I was just then ready to enter the hospital and couldn't leave. I was the only one connected with the company who was in any manner familiar with the facts of the case. It was mid-winter, the weather was wintry and bad, and it was just impossible for any of us to get there. As soon as the weather would permit, my father came down and made some little investigation, the best he could. Just as soon as my doctor would permit, I returned and made investigation and have discovered facts which are submitted in this record to the effect that plaintiff was not injured in our service in any way.''

In support of these matters set up in the said motion and affidavits, there were attached other affidavits of Le- Roy Stroyick and E. J. Eastep, which affidavits seem to be replete with minute and detailed facts as to statements made by Charley Smith relating the manner in which he was injured. It seems to us that it must be determined that the officer of the said corporation, the man who had been in charge, who lived in that county, was sick and wholly incapacitated to appear in court and be present at the trial of the case, and we think facts are further inferable that no one else under the circumstances could have at that time taken his place upon short notice and that even if an attorney had been selected and employed

he could have done no more than insist upon a delay in the trial of the case. Besides, it is urged that at the particular season the weather was severe and it was impracticable, if not impossible, in the short space of time still remaining, after H. C. Urschel had gone from Arkansas to Bowling Green, Ohio, to make proper arrangements for the trial of a case of any importance. The facts stated in this motion for new trial were controverted, witnesses were offered who testified; and upon the conclusion of the presentation the court overruled the motion.

Let it be stated at the outset that motions for new trial ordinarily address themselves to the sound discretion of the trial court. This case is not different from the usual or ordinary case in that respect. We think, however, that the trial court abused that discretion reposed in it, and it was most probably done in part, at least, because of the fact that the same judge who heard the motion for new trial was not the one who sat when the judgment was rendered, and the one overruling the motion may have acted largely in deference to his worthy predecessor who rendered the judgment.

It is urged in this case that H. C. Urschel, the man who had charge of the corporation's business, acted in a very negligent manner, knowing that a suit had been filed against his company for $45,000. He left the state of Arkansas and went back to Bowling Green, Ohio, without attempting preparation for the defense of the suit, and, therefore, should suffer the consequent penalties for his indiscretion.

It is, also, argued that he attempted to teach plaintiff's attorneys how to practice law by suggesting to them the proper kind of service to be had, that it should be had upon him and not upon Wages. However much any one of these individual or particular criticisms may be justified when they are separated and examined as disconnected from all other matters, yet if all these conditions be considered together we must reach a different conclusion. In the first place, parties' rights are not always determined by judgments rendered in default, but

they may be when parties wholly ignore the proceedings of the court.

Mr. H. C. Urschel probably thought he was acting with due consideration concerning the form of this litigation while he remained in Harrison until about the 18th when he was expecting service of summons upon him. He seemed not to have known he could not have been served in Boone county. Although he was probably mistaken in regard to the rights of his company, he was negligent of those rights when he went away, returning to his former home in Bowling Green, Ohio, for medical treatment, if he acted in the belief that no proper suit was pending against his company which could be tried until he returned. It is shown that B. H. Urschel, the father of H. C. Urschel, attempted to secure the services of an attorney, that he talked with Mr. Moore, who had already been employed as one of plaintiff's counsel, that he did not employ anyone else. This is offered to establish knowledge of pendency of suit. The father, who was attempting to do this, was not that officer of the company who had charge of the business, who was acquainted with Charley Smith and who had talked with him and who, if anybody, was in best position to prepare the case for trial; and this trip of the elder Urschel was, no doubt, made only a few days before the court convened.

We are impelled to believe that had the facts been stated to the trial judge on the day the court convened or on the day when the default judgment was rendered, the judge of that court would have necessarily, in the due exercise of judicial discretion, continued the case until Mr. Urschel, the man who had the corporation's business in charge, and who was its manager, was at least able to look after affairs or to have had time within which to select someone else who could do so. A continuance under the conditions was in order, that the rights of the parties might be determined by a full and fair presentation of the issues. It seems now sharply inconsistent to deny to the parties a right to try these issues that have not yet been so determined. If H. C. Urschel had gone away on a visit or even on matters of business, his conduct would not have been excusable, but we note he re-

turned within two days after he was discharged by the physician who had treated him during his absence.

Besides these matters, as above set forth, it is also urged and argued that until a judgment of $25,000 was rendered no ordinary investigation, however diligent Urschel might have been, would have discovered the facts set forth in Stroyick's and Eastep's affidavits within the short period prior to the trial. This perhaps could not be established.

If Smith did tell them, which he denied upon motion for new trial, that a rock had fallen when he was in the mine, that it had hit his hat brim, but did not fall upon him, and that the injuries from which he suffered at the time they saw him, and which was not a great while after the time of the alleged accident for which he sued, were from an accident in which he had fallen from a tree where he was attempting to gather wild grapes, these were matters which the defendant should have a right to present to a jury in defense of a suit so vitally important to both the parties.

This evidence was competent, material and relevant to the issues involved and might have been potent factors in the jury's deliberations upon a trial and have materially changed the result. In a consideration of these matters upon the motion, the court could give no effect to appellee's denial then made. He was not sitting as a jury. But he might well determine the materiality and competency of such newly-discovered evidence, whether it was frivolous, dilatory, or presented out of due time, and other considerations appealing to the proper exercise of discretion. *Forsgren* v. *Massey,* 185 Ark. 90, 92, 46 S. W. 2d 20; *Baldwin* v. *Pilgreen,* 188 Ark. 131, 132, 64 S. W. 2d 336.

There are numerous authorities to the same effect, but the foregoing announce the rule.

Our conclusion upon the whole matter, and in consideration, not of individual or segregated facts, but of all these matters in the aggregate, is that the court erred in overruling appellant's motion for a new trial.

The judgment is reversed, and the cause is remanded for a new trial.